Ruth Curry Brooks v. Commissioner.
Brooks v. Commissioner
Docket No. 16651.
United States Tax Court
1948 Tax Ct. Memo LEXIS 99; 7 T.C.M. (CCH) 635; T.C.M. (RIA) 48173; August 31, 1948
*99 Expenses for room and board paid by petitioner while in Philadelphia, at which place she was employed in the Immigration and Naturalization Service, are not deductible as traveling expenses even though petitioner retained a residence in Washington, D.C., from which place her office had been transferred. Railroad expenses from Philadelphia to Washington and return were incurred for petitioner's personal convenience and likewise are not deductible as traveling expenses. Ruth Curry Brooks, pro se. Elmer L. Corbin, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Deficiencies were determined against petitioner for the taxable years 1943, 1944, and 1945 in the respective amounts of $492.78, $452.13, and $475.37. The question raised in this proceeding is whether the petitioner, a government employee, is entitled to deduct her expenses for room and board at her post of duty and official headquarters in Philadelphia, Pennsylvania, and, also, whether she is entitled to deduct her transportation expenses between Philadelphia and Washington where she maintained a home, or whether these expenses constitute personal living expenses and therefore *100 are not deductible. Findings of Fact The petitioner has been an employee of the Immigration and Naturalization Service of the United States Government since June 23, 1926. On July 2, 1927, the petitioner married and set up a residence with her husband in an apartment at the Annapolis Hotel, Washington, D.C. The petitioner's husband is a contractor and builder with offices in the Woodward Building at 15th and H Streets, Northwest, Washington, D.C. During the period involved in this proceeding, he maintained his business in Washington, D.C., and his residence at the Annapolis Hotel, Washington, D.C. On January 9, 1942, the petitioner received a copy of a "Notice to the Personnel of the Central Office" of the Immigration and Naturalization Service, Washington, D.C., stating in part as follows: "Notice to the Personnel of the Central Office "The Central Office of this Service will be moved to Philadelphia. It is expected that the move will be made during February. The precise date will be announced as soon as possible. "It is confidently hoped that every employee, except those where circumstances make it actually impossible, will move with the office. This country is at *101 war and personal inconvenience and even hardship must be cheerfully accepted by everyone. "You are aware of the Presidental Order on the Decentralization of Government Agencies to make room for those who must function in Washington during the war. * * * * * *
"* * * Transportation for employees will be paid in accordance with standardized travel regulations and moving costs for their household goods will be paid by the Government * * * and each employee will be allowed a per diem of $5.00 in lieu of subsistence for each day not exceeding 15 days from the time of departure from Washington until such time as living accommodations are found. * * *" On February 25, 1942, the Immigration and Naturalization Service, Washington, D.C., issued a "Notice to All Employees of the Central Office", stating in part as follows: "Notice to All Employees of the Central Office "1. As you were informed on January 9, 1942, transportation for employees moving from Washington, D.C. to Philadelphia, Pennsylvania, will be provided at the expense of the government, and a special per diem allowance will be granted at the rate of $5.00. * * *
"5. a. * * * "b. An employee who has no dependents *102 living with him, or an employee who does not move his dependents will be allowed per diem at the rate of $5.00 for 4 days. * * *
"6. Employees will not be furnished individual transfer of official station letters as all transfers will be covered under a blanket order." * * *
On February 26, 1942, the Immigration and Naturalization Service, Washington, D.C., issued a blanket order, stating in part as follows: "February 26, 1942 "To the Officers and Employees of the Immigration and Naturalization Service Indicated on the Attached List "This is to advise you that your headquarters are hereby changed from Washington, D.C., to Philadelphia, Pennsylvania. "This change is being made for official reasons and not for your personal convenience. You will accordingly be allowed your necessary expenses of travel in connection therewith as indicated below:" * * *
In March of 1942 the petitioner was employed in the office in Charge of the Certification Branch of the Immigration and Naturalization Service, Washington, D.C., which office was ordered to move to Philadelphia, Pennsylvania, on Monday, March 2, 1942. The petitioner had no control over the moving of the Immigration *103 and Naturalization Service to Philadelphia and, unless she went with her office to Philadelphia, she would have lost the position which she she with the said office since June 23, 1926. The petitioner, who was transferred from Washington, D.C., to Philadelphia, Pennsylvania, pursuant to blanket order issued February 26, 1942, left Washington, D.C., on March 3, 1942, and reported to the office of the Immigration and Naturalization Service, Philadelphia, Pennsylvania, at 9:30 a.m. on March 4, 1942. The United States Government paid the petitioner's transportation from Washington, D.C., to Philadelphia, Pennsylvania. The Immigration and Naturalization Service of the United States Government maintained offices in the Franklin Trust Building, Philadelphia, Pennsylvania, from March 4, 1942, to April 1, 1948, when it was ordered to return to Washington, D.C. During the period March, 1942, to April, 1948, the petitioner maintained a room at the Sylvania Hotel, Philadelphia, Pennsylvania. The petitioner paid the following amounts as rental to the Sylvania Hotel for use of her room: Year
Amount
1943
$1,053.50
1944
1,099.00
1945
1,092.00
The cost of the petitioner's *104 meals, computed at $1.50 per day on a six-day basis for 52 weeks each year, was: Year
Amount
1943
$468.00
1944
468.00
1945
468.00
The cost of the petitioner's transportation from Philadelphia, Pennsylvania, to Washington, D.C., and return, computed on the basis of 15 yearly round trips at $5.85 each, was: Year
Amount
1943
$87.75
1944
87.75
1945
87.75 These trips were made for petitioner's personal convenience. During the period March 4, 1942, to December 31, 1945, inclusive, the petitioner was employed by the Immigration and Naturalization Service at Philadelphia, Pennsylvania, and her post of duty was Philadelphia, Pennsylvania. During the period the Office of Immigration and Naturalization Service was in Philadelphia from March, 1942, until April, 1948, the petitioner did not remove any of her household effects from her home which she maintained with her husband in the District of Columbia. When the Immigration and Naturalization Service of the United States Government, Philadelphia, Pennsylvania, was ordered back to Washington, D.C., on April 1, 1948, the petitioner received a letter, stating in part as follows: "March 31, 1948 *105 "Ruth Curry Brooks, Examiner "Central Office "Immigration and Naturalization Service "Philadelphia, Pennsylvania
"Your official station is changed to Washington, D.C., such change to become effective upon your entrance on duty at that point." * * *
Opinion ARUNDELL, Judge: Petitioner in this proceeding seeks to deduct as traveling expenses, under section 23 (a) (1) (A) [1] of the Internal Revenue Code, her board and room while employed in Philadelphia, and her railroad fare covering various trips from that city to Washington, D.C. Respondent urges that these expenses are personal living expenses which are specifically made non-deductible by section 24 (a) (1) [2] of the Internal Revenue Code. *106 As stated by the Supreme Court in Commissioner v. Flowers, 326 U.S. 465, three conditions must be satisfied before a travel expense deduction may be made under section 23 (a) (1) (A) - (1) the expense must be a reasonable and necessary traveling expense as that term is generally understood; (2) the expense must be incurred "while away from home", and (3) the expense must be incurred in pursuit of business, and there must be a direct connection between the expenditure and the carrying on of the trade or business. Petitioner since 1926 has been an employee of the Immigration and Naturalization Service, U.S. Department of Justice. In February, 1942, the headquarters of this service was moved from Washington, D.C., to Philadelphia, Pennsylvania, where it continued to be so located until March 31, 1948. That petitioner's principal place of business was Philadelphia after the Immigration and Naturalization Service was moved to that place we think cannot be gainsaid, and the fact that the change of location was prompted by the exigencies of war would appear to be of no moment. A person stationed at one point for a period of six years can hardly be regarded as in a travel *107 status. We have repeatedly held that section 23 (a) (1) (A), supra, may not be availed of to secure a deduction from gross income for travel expenses paid or incurred by a taxpayer while at his principal place of business, post of duty, or principal place of employment. John Henry Chapman, 9 T.C. 619; S. M. R. O'Hara, 6 T.C. 841; Mort L. Bixler, 5 B.T.A. 1181; Barnhill v. Commissioner, 148 Fed. (2d) 913; George W. Lindsay, 34 B.T.A. 840; Jennie A. Peters, 19 B.T.A. 901; William Lee Tracy, 39 B.T.A. 578. We think it is equally clear that the expenses in question were not incurred in pursuit of the business of her employer, the Immigration and Naturalization Service. Hence, the expenditures in question do not appear to meet the test of having been incurred in pursuit of a trade or business. Petitioner spent a greater sum than if the place of her employment had remained in Washington solely because she saw fit to maintain her home in Washington rather than at her place of employment, but this she did as a matter of personal convenience and in no sense in the interest of her employer's business. *108 Her trips back and forth between Philadelphia and Washington, D.C., likewise were purely personal in their nature and they had no relationship to the carrying on of any business and, particularly, they were in no wise connected with the carrying on of the business of her employer. The respondent is sustained in his disallowance of the deductions. Decision will be entered for the respondent. Footnotes
1. Internal Revenue Code: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *. ↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x); * * *↩