Mortimer M. Mahony, Emma L. Mahony v. Commissioner.
Mahony v. Commissioner
Docket No. 3105.
United States Tax Court
1945 Tax Ct. Memo LEXIS 243; 4 T.C.M. (CCH) 395; T.C.M. (RIA) 45122; April 10, 1945
*243 Held, that certain expenses incurred and paid by petitioner while away from home in pursuit of his trade or business are deductible business expenses under section 23 (a) (1) of the Internal Revenue Code; held, further, that expenditures for entertainment while petitioner was at the location of his home and principal place of business were ordinary and necessary expenses connected with his trade or business, and deductible as such under said section. H. Root, Esq., for the petitioners. Arthur H. Fast, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income tax of petitioners of $868.84 for the calendar year 1940 and $1,368.82 for the *244 calendar year 1941. Petitioners contest the determinations. Although the deficiencies were determined against both petitioners for both taxable years as husband and wife, they filed a joint return for the year 1940 only. The petitioner, Emma L. Mahony, is involved herein only by reason of that joint return, and respondent concedes that the issue involved relates solely to the husband, Mortimer M. Mahony. Findings of Fact The deficiencies result from respondent's disallowance as "salary expense" of all deductions taken in the returns in the amounts of $2,144.75 and $2,349.66 for the years 1940 and 1941, respectively. The deficiency notice does not otherwise state the reason for the disallowances. Due to an error in addition the amount of $2,349.66 should have been $2,347.46. The "salary expense" was composed of items representing expenditures for railroad fares, lodging, board, telephone calls, and entertainment as hereinafter set out. Whenever the term "petitioner" is hereinafter used reference is had to the petitioner, Mortimer M. Mahony. The petitioners are husband and wife residing in Miami Beach, Florida. Petitioner resided in that place in either a rented home or apartment *245 from February 1939 to the date of the hearing, February 22, 1944. Prior to this period petitioner resided in Baltimore, Maryland in a home then owned by him. Petitioner still owns, and has owned, the Baltimore property for thirty years although he has tried to sell it and it is still for sale. The income tax returns for the years involved were filed with the collector for the district of Florida. Petitioner pays his personal property taxes and is a registered voter in Miami Beach, Florida. That city was, during the taxable years, and still is his business address. Petitioner's occupation is, and was during the taxable years, that of managing the pari-mutuel departments of racing establishments located in various parts of the United States. He was employed for such purpose by the management of the various establishments. In following his occupation petitioner is responsible for the safe handling of all money received by his department from betting on the races. He deducts from the receipts the percentage taken by the states and the lawful percentages allowed the track owners and distributes the remainder among the holders of winning tickets. For five months of each year (including *246 each taxable year) during the winter petitioner conducts his business from Miami Beach, during which time he confers with officials of various racing establishments by whom he is employed, and who are available in Florida during that period, but not available there during any other months. During that period he makes plans with those officials in preparation for the ensuing racing seasons at their various racing establishments. Also during a portion of the five months petitioner manages the pari-mutuel department of Hialeah and tracks operated by the Miami Jockey Club at or near Miami Beach. The identities of the racing establishments employing petitioner and the compensation paid by each to petitioner are conceded on brief by respondent to be as shown on petitioners' tax returns. Petitioner also reported on those returns his expenses paid at each establishment during the rendition of such services. The identities of the establishments, the compensation received by the petitioner, and his expenses computed at $10 per day at each location (exclusive of railroad fare and exclusive of amount expended in Miami Beach for entertaining officials of various racing establishments) are as *247 follows: Compensation
Expenses
Identities
1940
1941
1940
1941
Miami Jockey Club
$6,600.00
$7,720.00
Maryland Jockey Club
2,500.00
2,500.00
Westchester Racing Assn.
3,600.00
4,039.00 $360 $400
Narragansett
3,966.25
4,067.25
190
220
Rockingham
3,887.70
180
Timonium
1,250.00
1,250.00
United Hunts
200.00
200.00
5
V. Treanor
888.00
Revere
3,000.00
Suffolk
4,638.00
400
Saratoga
2,900.00
3,000.00
290
300
Eastern Racing Assn.
4,486.50
320
New Hampshire Racing Assn.
4,737.00
340
Petitioner's employment by the various racing establishments was under oral agreements covering periods varying from three to five years at fixed compensations which altogether totalled $33,429.95 in 1940 and $31,995.75 in 1941 as shown by his income tax returns. Petitioner's occupation requires the organization by him of a crew of men at each race track qualified to assist him in the performance of his duties and as there were seldom, if ever, a sufficient number of such men available at any one race track where petitioner operated, it was frequently necessary for him to communicate with such men by long distance telephone *248 to ascertain if and when they would be available at a particular race track and to obtain substitutes for those who were not available. Petitioner, while away from Miami Beach in pursuit of his occupation at the various racing establishments other than those located at or near Miami Beach, Baltimore, Maryland, and Saratoga, New York, expended from $5 to $8 per day for his hotel room and $5 to $6 a day for meals. At Saratoga petitioner did not stay at a hotel, but paid $600 for a rented house for the 30 days he spent there for each of the years 1940 and 1941 and employed a chauffeur and cook. He also paid for the gas, telephone, and electric bills for the house. His wife was with him at Saratoga. In his returns for 1940 and 1941 petitioner deducted, for the above enumerated expenses, and for telephone calls and occasional meals for race track officials, a flat sum of $10 per day, amounting to $1,425 in 1940 and $1,580 in 1941. The $10 per day was less than his actual expenditures for such purposes. In his returns for prior taxable years petitioner's deductions for expenses of a like nature were taken at the same flat rate of $10 per day and never questioned. In 1940 petitioner *249 expended the amount of $259.75 and in 1941 the amount of $307.46 for railroad fare to, from, and between the various racing establishments where he was employed. In his returns for 1940 and 1941 petitioner deducted his expenditures for railroad fare in the above stated amounts. Due to an error in addition the amount of $309.66 should have been $307.46. During petitioner's five months stay in Miami Beach in the taxable years he expended $600 or $700 each year in entertaining the officials of the various racing establishments who were in Florida during that period, and on his returns for each of the years 1940 and 1941 petitioner deducted $460 as amounts expended for such purpose. During petitioner's stay each year of 35 or 40 days in Baltimore he occupied the property owned by him there and made no claim for a deduction for expenses incurred or paid while there. All the deductions set out above were disallowed by the respondent in his determinations. During the taxable years petitioner's principal place of business and his home were in Miami Beach, Florida. Petitioner's expenditures of $1,425 in 1940 and $1,580 in 1941 incurred and paid for food, lodging, telephone, and *250 occasional meals for race track officials while away from Miami Beach and his expenditures of $259.75 in 1940 and $307.46 in 1941 for railroad fare were ordinary and necessary expenses incurred and paid by petitioner while he was away from home carrying on his trade or business. Petitioner's expenditures of $460 in each of the years 1940 and 1941 for the entertainment of track officials at Miami Beach were ordinary and necessary expenses incurred and paid in connection with his trade or business. Opinion TYSON, Judge: The first question presented is whether petitioner may deduct from his gross income expenses incurred and paid for train fare, board, lodging, telephone tolls, and occasional meals in entertaining race track officials; all such expenses being so incurred and paid while petitioner was away from Miami Beach, Florida. The expenses were incurred and paid by petitioner in travelling to, from, and between racing establishments located in various parts of the United States, and while living in the vicinity of such establishments in the course of his employment as managed of the pari-mutuel departments of those establishments. For a period, including the taxable years *251 and extending from February 1939 to February 1944, petitioner during five months of each year resided at Miami Beach, Florida, occupying rented houses or apartments. During this period Miami Beach was also petitioner's business address. Petitioner is a registered voter and pays his personal property tax in that city. During some portion of the five months of each year when petitioner resided in Miami Beach he was employed by the Miami Jockey Club to operate its pari-mutuel department at Hialeah race track during its racing season. The length of time when petitioner was so employed is not disclosed by the record, but the record does show that the compensation received by petitioner for such employment in each taxable year was far in excess of that received by him from any one of the other racing establishments. During this five months period in each year he was at times also engaged with officials of various racing establishments in making plans and preparations for their ensuing racing seasons. These officials were then available for that purpose in Miami Beach, but were not so available in other periods of the year. In view of the facts recited in this paragraph and the further fact *252 that during the seven months in each year when petitioner was not residing in Miami Beach his occupation or business was being pursued temporarily at ten racing establishments during 1940 and at eight such establishments during 1941, it is apparent that if petitioner had a principal place of business and a home they were in Miami Beach. From these facts, and other facts of record, we conclude, and have so found as a fact, that petitioner's principal place of business and home were in Miami Beach, Florida in the taxable years. Joseph W. Powell, 34 B.T.A. 655, affirmed 94 Fed. (2d) 483; Harry F. Schurer, 3 T.C. 544; Charles G. Gustafson, 3 T.C. 998; Cf. Coburn v. Commissioner, 138 Fed. (2d) 763; Wallace v. Commissioner, 144 Fed. (2d) 407; Flowers v. Commissioner, 148 Fed. (2d) 163 (C.C.A. 5th Cir., decided March 23, 1945). With regard to the cases of Mort L. Bixler, 5 B.T.A. 1181; Charles E. Duncan, 17 B.T.A. 1088, affirmed 47 Fed. (2d) 1082; and George W. Lindsay, 34 B.T.A. 840, relied on by respondent in his contention that we should reach *253 a conclusion contrary to the one we have reached, it may be said here as was said in the Schurer case: "We have examined these cases, but we do not think that their facts are parallel with those in the instant proceeding". Having concluded that the home of petitioner was in Miami Beach, Florida during the taxable years, we hold under the facts shown in our findings that the amounts of $1,425 expended by petitioner in 1940 and $1,580 in 1941 for food, lodging, telephone tolls, and occasional meals for race track officials and the amounts expended by petitioner of $259.75 in 1940 and $307.46 in 1941 for railroad fare to, from, and between the various race tracks where he was employed, all of which amounts were expended by petitioner while away from Miami Beach in pursuit of his trade or business, constitute ordinary and necessary expenses incurred and paid by petitioner during the respective taxable years while he was away from home in pursuit of his trade or business within the purview of section 23 (a) (1) of the Internal Revenue Code. The $10 per day deducted for board and lodging at the various hotels, for long distance telephone calls, and an occasional *254 meal for track officials, was less than petitioner's actual daily expenses for such purposes; and we think that nolfess than $10 per day is a fair apportionment of petitioner's share of the expenses of his stay in Saratoga when he resided with his wife in a rented house which cost $20 a day as rental. That this apportionment is fair would seem to be obvious when it is considered that petitioner had other expenses while living in Saratoga such as those for gas, electricity, a cook, and also, necessarily, for food. The second question presented is whether petitioner is entitled, as claimed by him and disallowed by respondent, to a deduction of $460 as an ordinary and necessary business expense incurred and paid during each taxable year for the entertainment of track officials while they were in Miami Beach confering with petitioner in making plans preparatory for the ensuing seasons at the various racing establishments. We have found as a fact that petitioner expended the amount claimed for entertainment of track officials. Respondent contends that there is no "proof that the expenses were necessary or were connected with the business". While these track officials were in Miami Beach *255 they together with petitioner made plans in preparation for the ensuing racing season at their various racing establishments. The receipt of an annual income in excess of $30,000 from the racing establishments depended on the maintenance of satisfactory relationships with the representatives of those establishments by whom he was employed on an oral contract basis. The continuation and renewal of such contracts was necessarily the fundamental basis of his business activity. His local residence naturally placed him in the position of being host at times to his visiting business associates and employers. The expenditure of $460 each season for entertainment so obviously incidental to an employment yielding such large returns, is not only reasonable in amount, but in the light of business custom and normal experience would appear to be connected with petitioner's business and necessary thereto. The deductions should be and are hereby allowed. Blackmer v. Commissioner, 70 Fed. (2d) 255; Cohan v. Commissioner, 39 Fed. (2d) 540; R. P. Shea, 24 B.T.A. 798; A. R. Losh, 1 T.C. 1019. Decision will be entered under Rule 50.